MAUDE V. SMITH

*v.*

THE CITY OF BLUEFIELD,

*A Municipal Corporation*

(No. 10053)

Submitted September 21, 1948.   Decided

November 16, 1948.

HAYMOND and FOX, JUDGES, dissenting.

*Luther G. Scott,* for plaintiff in error.

*Burton, Sanders & Shaffer, and Joseph M. Sanders,* for defendant in error.

RILEY, PRESIDENT:

This is an action by Maude V. Smith to recover damages for personal injuries alleged to have been sustained by reason of a sidewalk being out of repair. The defendant, City of Bluefield, prosecutes error to a judgment, based on a jury verdict against it in the amount of $2,716.75.

A preliminary question was raised on special plea and demurrer to the amended declaration regarding the State Road Commission's responsibility, if any, for the upkeep of the sidewalk. It is contended on behalf of the city that the action of the road commissioner, designating Federal Street as a part of the primary road system, obligated the commission to maintain not only the vehicular part of Federal Street, but the contiguous sidewalks as well. In this regard it should be noted that the statute (Chapter 40, Article X, Section 17, Acts, West Virginia Legislature, First Extraordinary Session, 1933, formerly Code, 17-9-33) gives a right of action to "any person who sustains an injury to his person or property by reason of * * * any street or sidewalk or alley in any incorporated city, town or village, being out of repair." Whereas, Chapter 40, Article IV, Section 26, Acts, West Virginia Legislature (1st Ex. Sess.), 1933, under which the Road Commissioner designated Federal Street as part of the primary road system of the State, speaks only of "streets" and "bridges". "Streets" as used in this statute, in our opinion, relates to that portion of the designated municipal thoroughfare which is devoted to vehicular traffic and not to "sidewalks". The obvious purpose of the right to designate was to insure continuous and satisfactory vehicular traffic through municipalities. If it had been the intention to relieve the municipalities of the responsibility of maintaining sidewalks along designated streets, we believe the statute would have so provided, by specifically mentioning "sidewalks" along with "streets". Such being the case, the City of Bluefield is subject to action for damages for injuries sustained by reason of its sidewalks being out of repair.

The portion of the sidewalk claimed to be out of repair is located on the west side of Federal Street and directly north of the Scott Street intersection. A restaurant, known as Leslie's Car Diner, stands on the northwest corner of the intersection, facing Federal Street. The sidewalk in front of Leslie's is divided into two strips by a seam or division, running parallel with the street, the

width of the outside strip being seven and one-half feet (except at the corner where it is rounded to some extent) and the inside strip two feet, respectively. This division continues across the sidewalk flanking Leslie's on the south to the curb line of Scott Street. At a point along this seam, or division, between the two strips and to the south of the building line, the inside edge of the seven and a half-foot cement slab was almost one and a quarter inches above the adjoining edge of the two-foot strip. This unevenness in elevation of the edges tapered off in both directions to a common level, its whole length totalling approximately three feet. The witnesses in testifying concerning this unevenness in the edges of the two strips of cement speak of a "depression" along the edge of the two-foot strip, thus indicating a "sag" in the eastern side of the latter strip, rather than a "hump" in the wide strip.

The alleged accident occurred April 10, 1946. Plaintiff, who lived at Welch, had come to Bluefield on business. A few minutes prior to the accident she had alighted at the bus terminal just north of Leslie's Car Diner, and was on her way to the OPA offices. To reach her destination from the bus terminal, the usual course for a pedestrian to take was to travel south on the sidewalk heretofore described. Plaintiff says that as she proceeded on her way a part of her attention was given to the crossing immediately ahead, and that she did not notice any defect in the sidewalk until the heel of her shoe on her right foot turned, due to the unevenness of the edges of the two strips of cement, causing her to fall.

The city contends, among other things, (1) that the unevenness in the sidewalk, as heretofore described, was not such a defect as would render the sidewalk "out of repair" within the meaning of the statute; (2) that the plaintiff, by her own testimony, fixed the location of the accident at a point along the seam about one foot north of the greatest difference in elevation between the edges of the cement slabs, that is, at a point where there was only three-eighths of an inch difference; and (3) that plaintiff was guilty of contributory negligence,

The defendant cites *Yeager v. City of Bluefield,* 40 W. Va. 484, 21 S.E. 752, to the effect that: "A municipal corporation is not an insurer against accidents upon streets and sidewalks. Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient if the streets are in a reasonably safe condition for travel in the ordinary modes with ordinary care, by day or night." Also cited are *City of Roanoke v. Sutherland,* 150 Va. 749, 167 S. E. 243, and *Childress v. City of Richmond,* 181 Va. 267, 24 S. E. 2d 419, in both of which the question whether the street was so defective as to constitute a liability on the city was disposed of as a matter of law. It is contended on the part of the City of Bluefield in the instant case that the facts are so well established and unequivocal that the trial court should have proceeded in like manner upon considering the demurrer to the amended declaration. In this regard it should be noted that the seam or division in question being to the right of the center of the sidewalk looking south, plaintiff, who was proceeding in that direction, of necessity must have travelled along or on said seam or division, and because of the very nature and location of said unevenness, she, in the exercise of reasonable care, would not ordinarily have discovered anything prior to the turning of her right ankle to cause her to have changed her course. As it stood, the unevenness was somewhat of a trap or a hidden defect which ordinarily would not be readily observed by a pedestrian, especially a stranger, travelling south on the sidewalk in question.

As we envision the condition of the sidewalk at the point of the accident, people could differ as to whether or not it was "out of repair" in the statutory sense. So, whether the sidewalk was out of repair becomes a practical question to be determined by its particular circumstances. And this was a matter for the jury. *Roth v. City of Moundsville,* 118 W. Va. 283, 190 S. E. 332; *Taylor v. City of Huntington,* 126 W. Va. 732, 30 S. E. (2d) 14.

We do not think that plaintiff's testimony, on cross-examination, to the effect that she fell over against the front of the restaurant, limited the accident to a point where the variance of elevation in the two seams of concrete was only three-eighths of an inch. It appears from the evidence that plaintiff did not accompany the jury at the time of the view. And it is quite clear from her testimony that she fell at a point where the difference in elevation was one and one-fourth inches. This latter point was one foot south of the place where defendant contends plaintiff's cross-examination fixed it.

We do not think that defendant's contention that plaintiff was guilty of contributory negligence, as a matter of law, is tenable. *Taylor v. City of Huntington, supra.* While a pedestrian walking along a public sidewalk cannot be indifferent to dangers in his pathway he is not required to keep his eyes fixed upon the sidewalk immediately in front of him. All that is required of him is the use of that degree of care which an ordinary prudent person would use under similar circumstances. We are of the opinion that the trial court properly overruled defendant's motions for a directed verdict.

Another error assigned is that the jury's verdict was excessive. After reviewing the medical care required during the period from April 10, 1946, the date of the injury, and May, 1947, the time of the trial, counsel asserts that the fact that only one of the four physicians had been called to testify indicates that their evidence would have been prejudicial to plaintiff. Also that the amount of $2,716.75 strongly suggests an improper quotient verdict. The record shows that at the time of the accident plaintiff was earning at least one hundred dollars a month as a saleslady for Maytag Company; that since the accident, had she been able to return to work, she would have earned at least one hundred dollars a month, or twelve hundred dollars a year; that prior to her injury she had been able to do all her house work, in addition to her sales work; and that before war shortages she had made more than

two hundred dollars a month. Another element of damages is that plaintiff suffered severe pain and anguish as the result of her injuries. In these circumstances we are of the opinion that it does not plainly appear that the verdict of the jury resulted from "mistake, partiality, passion, prejudice or lack of due consideration of the evidence". *O'Flaherty v. Tarrou,* 130 W. Va. 326, 43 S. E. (2d) 392; *Webb v. Brown & Williamson Tobacco Company,* 121 W. Va. 115, 2 S. E. (2d) 898.

We see no error in the three instructions given on behalf of plaintiff. While instruction No. 1 was objected to on the ground that it used the words of the statute "out of repair" without defining the same, plaintiff's instruction No. 2 (not objected to) told the jury that a sidewalk is out of repair, when, by reason of defects or obstructions on the surface of the sidewalk, the said sidewalk is unsafe for reasonable use by pedestrians, while in the exercise of reasonable care. Defendant's instruction No. 1, a peremptory instruction, was properly refused. Defendant's instruction No. 4 was also properly refused. It told the jury in effect that if they believed from the evidence that the defect was open and obvious and that plaintiff failed to choose a safe path around the same, such failure constitutes negligence, barring recovery. This ignored the fact that plaintiff testified that she did not see the defect prior to falling. This phase of the case was, however, substantially covered in defendant's instruction No. 3, which was not challenged.

Inasmuch as the plaintiff prevailed in the circuit court, and the further fact that the judgment of the circuit court must be affirmed, it becomes unnecessary to deal with plaintiff's cross-assignment of error, which challenges the action of the trial court in overruling her motion to exclude from the panel of twenty jurors selected in the case "any and all citizens or taxpayers of the City of Bluefield, a municipal corporation" pursuant to provisions of Code, 52-1-18.

The judgment of the circuit court must be affirmed.

*Judgment affirmed.*

HAYMOND, JUDGE, dissenting:

I can not agree to the judgment of this Court in affirming the action of the trial court in submitting to the jury the question whether the sidewalk on which the plaintiff fell and sustained the injuries of which she complains was out of repair within the meaning of Section 17, Article 10, Chapter 40, Acts of the Legislature, 1933, First Extraordinary Session, and in refusing, under the undisputed evidence of the nature of the alleged defect, to instruct the jury to render a verdict for the defendant. This action of the trial court was clearly erroneous and, for that reason, I dissent.

The alleged defect in the sidewalk consisted of a slight difference in elevation between the adjoining edges of two of its large concrete sections. At a location approximately three feet from the place where these sections joined on the same surface elevation the edge of one section had subsided on a gradual slope to a depth of one and one fourth inches below the adjoining edge of the other section. There was no obstruction upon the surface and, other than this difference in elevation, which at the lowest point was only one and one quarter inches, the sidewalk, properly constructed and nine and one half feet in width, was without even the slightest defect or irregularity. The character of this obviously trivial inequality in its surface was shown by evidence which was free from conflict or dispute. The prior decisions of this Court firmly establish and, until the present decision, had settled in this jurisdiction, the principle that when the evidence of a defect or an obstruction in a public street or highway is clear and without conflict the question whether the particular defect or obstruction is such as to render a municipality liable for an injury directly resulting from it is one of law for the court. *Parrish v. City of Huntington,* 57 W.Va. 286, 50 S.E. 416;

*Silverthorn v. City of Chester,* 106 W.Va. 613, 146 S.E. 614; *Taylor v. City of Huntington,* 126 W. Va. 732, 30 S.E. 2d 14. See also *Whittington, Adm'r. v. County Court of Jefferson County,* 79 W. Va. 1, 90 S.E. 821. Decisions of appellate courts in other jurisdictions are to the same effect.

An inequality of two inches or less has been held, as matter of law, not to render a sidewalk unsafe for public travel. *Northrup v. Pontiac,* 159 Mich. 250, 123 N. W. 1107. An irregularity of one and five eighths inches in cement blocks of a sidewalk does not, as matter of law, make it unsafe for public travel or render a city liable for injuries to a pedestrian who stumbled upon it. *City and County of Denver v. Burrows,* 76 Colo. 17, 227 P. 840.

In *Gastel v. City of New York,* 194 N. Y. 15, 86 N. E. 833, 128 Am. St. Rep. 540, 16 Am. Cas. 635, it was held that there was no liability upon the part of a municipality for injuries sustained by a pedestrian who tripped and fell upon a sidewalk by reason of a difference of approximately an inch in the elevation of its adjacent portions. In that case the New York Court of Appeals, in language which is peculiarly applicable in this case, said: "If the full description of the alleged defect in a municipal case shows that it was of such a trivial character that it was not naturally dangerous, and must almost inevitably occur in the many street miles of a city unless a greviously burdensome degree of care and expense is to be exacted, a recovery will not be allowed even though witnesses have testified to prior accidents. The familiar rule of damnum absque injuria will be applied, and travelers' mishaps will be charged to their own carelessness or to unavoidable mischance rather than to the treasury of the city. We think that such is the present case. We have had a description of the sidewalk complained of. The difference in level was small, averaging for the entire width of the walk about one inch. There was no space under the upper edge in which the foot might catch, and the walk was not broken or otherwise out of repair. We think we may take judicial notice of the fact

which ordinary observation discloses that there is scarcely a rod in the streets of any city in which there may not be discovered some little uneveness or irregularity in sidewalks, crosswalks, curbs or pavements. As a result of various causes, climatic and otherwise, they are constantly occurring and recurring. Ordinarily they cause no difficulties, and it would require a vast expenditure of money to remove them all. The recent tendency of the law as evidenced by legislative enactment has been in the direction of making less rather than more stringent the rules of municipal liability in such cases, and directing our considerations to the precise facts here presented, we think that we should be disregarding those principles of liability which are justified by reason and public policy if we should permit a recovery." In *Davidson v. City of New York*, 133 App. Div. 352, 117 N. Y. Supp. 185, the Appellate Division of the Supreme Court of that State held that a flagstone in a sidewalk six feet wide which extended at the highest point two and one half inches above the other stones and gradually decreased in height until it became level with them was not a defect which would render a city liable for injuries to a person who tripped and fell upon it. In the opinion in that case the Court said: "It is impossible to free a city from such slight defects, and unreasonable to say, or permit a jury to say, that they are 'obviously dangerous', which is the test of the city's liability. We know that they are not. If they were, thousands and thousands would be hurt by them hourly. That it is 'possible' for some one out of many, out of millions, it may be, to trip on such a defect does not make it dangerous."

In the case at bar it is clear, so clear that reasonable minds may reach but one conclusion, that the trivial and insignificant irregularity in the sidewalk, did not, as matter of law, render it out of repair, in the statutory sense, and that language has been held, by numerous decisions of this Court, to mean not safe for travel in the usual modes with ordinary care by day or by night. *Rich v. Rosenshine*, 131 W. Va. 30, 45 S.E. 2nd 499. The exact and unquestioned description of the nature of the

irregularity indicates plainly that it was not of such character as to render the sidewalk out of repair, within the meaning of the statute and, for that reason, as matter of law, the city was not liable.

The character of the alleged defect, which is disclosed by uncontroverted evidence, is common in and incapable of prevention from sidewalks in practically every municipality in this State. It is neither dangerous nor unsafe for any person exercising ordinary care in walking upon a sidewalk in which it exists and, tested by any reasonable standard of common experience, it is difficult to understand how it could cause any person, other than one who desired and endeavored to do so, to fall in traveling over it, and a person desiring and trying to fall would have fallen if it had not been present. As it is neither dangerous nor unsafe, a jury should not be permitted to find that it is either; and a finding to that effect, contrary to a well settled principle of law, should not be given judicial sanction.

The majority opinion seeks to justify its affirmance of the action of the trial court in submitting to the jury the question whether the sidewalk was out of repair within the meaning of the statute on the ground that "people could differ as to whether or not it was 'out of repair' in the statutory sense" and in consequence the question was "a matter for the jury". In approving that course the opinion overlooks, and completely ignores, the correct and entirely different rule which, as stated in the syllabus in the case of *Silverthorn v. City of Chester*, 106 W. Va. 613, 146 S.E. 614, is "Whether or not a public road or street is out of repair, should be decided by the court where the facts are undisputed and are such as would reasonably support only one of two theories." It need only be said that manifestly, by the application of a wrong rule, which is unsound and unsupported by authority, the majority has reached the wrong conclusion on this vital and controlling feature of the case.

In upholding the action of the trial court in this case the majority opinion, without either discussing or expressly overruling the cases which I have cited, has disregarded the previous holdings of this Court that the question now under discussion is, under the evidence, one of law for the court and not one of fact for the jury, and has impaired, if not destroyed, the force and the effect of those decisions. This is regrettable and, in my judgment, will inevitably give rise to confusion and instability in the law, beget extensive litigaton, and threaten the municipalities of this State with financial distress. I can not consent to or approve a decision which is likely to produce, or may render possible, any of those results.

The decision of the majority, though not expressly so declaring, in effect holds that a municipality is an insurer against injuries caused by any defect or irregularity in its streets and sidewalks and in that respect it is contrary to an unbroken line of cases in which this Court has repeatedly asserted that no liability of that character exists. More than sixty seven years ago, in the case of *Wilson v. City of Wheeling,* 19 W. Va. 323, 42 Am. Rep. 780, this Court unanimously decided, in Point 4 of the syllabus, that "A municipal corporation is not an insurer against accidents upon the streets and sidewalks. Nor is every defect therein, though it may cause the injury sued for, actionable. It is sufficient if the streets (which include sidewalks and bridges thereon) are in a reasonably safe condition for travel in the ordinary modes by night as well as by day, and whether they are so or not is a practical question to be determined in each case by its particular circumstances. * * *." The principles stated in the foregoing quotation have been recognized and approved in subsequent decisions, *Yeager v. City of Bluefield,* 40 W. Va. 484, 21 S. E. 752; *Van Pelt v. Town of Clarksburg,* 42 W. Va. 218, 24 S.E. 878; *Waggener v. Town of Point Pleasant,* 42 W. Va. 798, 26 S. E. 352; *Parrish v. City of Huntington,* 57 W. Va. 286, 50 S.E. 416; *Holsberry v. City of Elkins,* 86 W. Va. 487, 103 S. E. 271; and have not been heretofore questioned or disregarded. On this point, because of its pertinence, and in

the hope that it may be remembered and adhered to in the future, this passage is quoted from the opinion of this Court in *Parrish v. City of Huntington,* 57 W. Va. 286, 50 S. E. 416 : "A city is not an insurer against accidents upon its streets and sidewalks. It is simply required to keep them in a reasonably safe condition for persons traveling in the usual modes by day and night, and using ordinary care. A man may stumble and fall anywhere—in a house or in a street; but, because he happens to fall in the street, it follows, by no means, that the city is responsible for the injury which he receives. There are slight inequalities in sidewalks, and other trifling defects and obstructions, against which one might possibly strike his foot and fall, but if the injury might be avoided by the use of such care and caution as every reasonably prudent person ought to exercise, for his own safety, the city will not be liable." Under this statement of the law, if properly applied to the condition of the sidewalk as shown by evidence which is without conflict or dispute and to the act of the plaintiff in falling at the location of the alleged defect which existed in it, there is no liability upon the part of the city in this action ; and the trial court should have so decided as matter of law. If, however, a slight and trivial defect, such as that shown by undisputed evidence to have existed in this case and which common experience demonstrates to be neither dangerous nor unsafe, may be permitted to be found by a jury to be dangerous or unsafe and, in consequence, a city sidewalk, because of such defect, held to be out of repair within the meaning of the statute, as the majority now permits to be done, a municipality becomes for all practical purposes an insurer against accidents upon its streets or sidewalks resulting in injury to any person caused by any defect whatsoever. Such an intolerable result violates the sound, correct and generally accepted legal principles announced and applied in the decisions of this Court cited and referred to by me and, in my judgment, renders them inoperative and of no binding force or effect. To a departure from and a disregard of those principles I refuse to consent or agree.

Upon the binding authority of the cited decisions of this Court I would, under the evidence, deny any right of recovery by the plaintiff, reverse the judgment, set aside the verdict and award the defendant a new trial in this action.

I am authorized to say that Judge Fox concurs in this dissent.